16-3211
*Dong v. Sessions*

BIA
Christensen, IJ
A205 607 648

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of February, two thousand eighteen.

PRESENT:
     ROBERT A. KATZMANN,
         *Chief Judge,*
     PETER W. HALL,
     DENNY CHIN,
         *Circuit Judges.*

_____

YAN DONG,
     *Petitioner,*

     v.                   16-3211
                             NAC

JEFFERSON B. SESSIONS III,
UNITED STATES ATTORNEY GENERAL,
     *Respondent.*

_____

FOR PETITIONER:     Louis H. Klein, Flushing, NY.

FOR RESPONDENT:     Chad A. Readler, Acting Assistant Attorney General; Briena L.

Strippoli, Senior Litigation Counsel; John M. McAdams, Jr., Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Yan Dong, a native and citizen of the People's Republic of China, seeks review of an August 26, 2016, decision of the BIA affirming a November 25, 2014, decision of an Immigration Judge ("IJ") denying Dong's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Yan Dong,* No. A 205 607 648 (B.I.A. Aug. 26, 2016), *aff'g* No. A 205 607 648 (Immig. Ct. N.Y. City Nov. 25, 2014). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed the decisions of both the BIA and the IJ. *Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005). The standards of review are well established. *See* 8 U.S.C. § 1252(b)(4); *Xiu Xia Lin v.*

2

*Mukasey*, 534 F.3d 162, 165 (2d Cir. 2008); *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

## I.    Adverse Credibility Determination

The agency may, "[c]onsidering the totality of the circumstances," base a credibility finding on inconsistencies and omissions in an asylum applicant's statements and other record evidence, "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim."   8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin*, 534 F.3d at 166-67.   "A petitioner must do more than offer a plausible explanation for [her] inconsistent statements to secure relief; [s]he must demonstrate that a reasonable fact-finder would be *compelled* to credit [her] testimony."   *Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) (internal quotation marks omitted) (emphasis in original).   Substantial evidence supports the agency's determination that Dong was not credible.

The agency reasonably relied on inconsistencies and omissions in Dong's two written statements, her testimony, and letters from her parents, all of which called into question her claim that she was a whistleblower in China and fled to the

3

United States and became politically active for that reason. Dong was inconsistent about how or if she resigned from her job. She testified that she immediately tried to resign after reporting government corruption, but her employer refused to permit her resignation. In contrast, one written statement reported that she resigned after her employer failed to pay her for two months. The IJ was not required to accept Dong's explanation—that she thought that by leaving China, she effectively resigned from the company—because the written statement does not link her resignation with her departure from China. *See Majidi*, 430 F.3d at 80.

Discrepancies in Dong's statements also call into question her allegations that the government was monitoring and threatening her. Her second written statement asserted Chinese officials constantly called her mother in early 2010 to ask about Dong's whereabouts. But that statement omits Dong's trips to the United States and her voluntary returns to China. The agency did not err in relying on this omission. *See Kone v. Holder*, 596 F.3d 141, 150-51 (2d Cir. 2010) (holding that, considering context, voluntary return trips may be

4

considered as a factor in an adverse credibility determination). Dong's explanation—that she returned to China in part because she thought the Chinese government would no longer be interested in her—was not compelling because she also alleged that authorities had been constantly calling her mother just months earlier. *See Majidi*, 430 F.3d at 80.

Dong's letters from her parents further undermine her credibility because of the information they omit. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin*, 534 F.3d at 166-67. Although Dong's mother refers to threatening telephone calls she received and discusses Dong's political activities in the United States, her letter omits Dong's earlier trips to the United States, and both letters omit Dong's allegation that Chinese authorities handcuffed and threatened her father with imprisonment to prevent Dong from disclosing more government corruption. Despite Dong's contention that these omissions are irrelevant because they concern the period before she joined the China Democracy Party in the United States, the agency was permitted to rely on them. *See Xiu Xia Lin*, 534 F.3d at 167 (reasoning that "an IJ may rely on *any* inconsistency or omission

5

in making an adverse credibility determination" and upholding reliance on omissions and inconsistencies stemming from letters).

Given these inconsistencies and omissions, substantial evidence supports the adverse credibility determination. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin*, 534 F.3d at 165-66.

## II. Future Persecution Based on CDP Activities

To meet her burden of showing a well-founded fear of future persecution, Dong had to show a subjective fear of persecution that was objectively reasonable. *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004); *Jian Xing Huang v. U.S. INS*, 421 F.3d 125, 129 (2d Cir. 2005) ("In the absence of solid support in the record," an asylum applicant's fear of persecution is "speculative at best."). She could either establish a reasonable possibility that she would be singled out individually for persecution or "a pattern or practice . . . of persecution of a group of persons similarly situated to the applicant on account of . . . political opinion." 8 C.F.R. § 1208.13(b)(2)(iii); *Y.C. v. Holder*, 741 F.3d 325, 332 (2d Cir. 2013). Because Dong's CDP activities occurred in the United

6

States, she had to show that Chinese authorities were either already aware, or likely to become aware, of her prodemocracy activities. *Hongsheng Leng v. Mukasey*, 528 F.3d 135, 143 (2d Cir. 2008).

Dong did not meet that burden. She argues that she testified credibly that Chinese police had visited her parents to warn them that she would be questioned on returning to China if she continued her activism. She points to letters from her parents stating that the authorities had warned the family that they were aware of Dong's CDP activities. But the agency did not err in extending the adverse credibility determination to these assertions. *See Siewe v. Gonzales*, 480 F.3d 160, 170 (2d Cir. 2007) (reasoning that "a single false document or a single instance of false testimony may (if attributable to the petitioner) infect the balance of the alien's uncorroborated or unauthenticated evidence"). Moreover, the letters were the same ones that contained discrepancies about past events in China.

Nor did Dong demonstrate a reasonable possibility that Chinese authorities were likely to become aware of her

prodemocracy activism and to persecute her on that basis. The fact that she posted internet articles and that her photograph was on the CDP's website is not enough. *See Y.C.*, 741 F.3d at 333-34, 336-37. Dong's letters from the president of CDP refer to persecution of individuals who were predominately leaders of the prodemocracy movement or Democratic Party workers who were active in China. The only country conditions evidence in the record provides no further support: the 2013 State Department report reflected that China detained and mistreated political dissidents active in China, including members of the "banned Chinese Democracy Party," but did not identify any incidents in which individuals who engaged in prodemocracy activism in the United States were arrested or otherwise mistreated upon returning to China. Because Dong failed to demonstrate an objectively reasonable fear of persecution as needed for asylum, she also failed to meet the higher burdens of proof for withholding of removal and CAT relief. *Id.* at 335.

For the foregoing reasons, the petition for review is DENIED.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk of Court